Agnes, Peter W., J.
Szymas Lechoslaw (Lechoslaw) brought this action against Fleet National Bank (Fleet), Citibank, N.A. (Citibank), and Bank Handlowy w Warszawie S.A. (Citibank Poland)[2] alleging negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and unfair or deceptive acts or practices in violation of Massachusetts General Laws chapter 93A. Citibank Poland has been dismissed for lack of jurisdiction. Fleet now moves for partial summary judgment on counts III, IV, V, VI, and VII of the Amended Complaint. After a hearing and review of the record and the parties’ memoranda, for the reasons set forth below, Fleet’s motion is DENIED.

BACKGROUND

Lechoslaw is a Polish immigrant to the United States who speaks limited English. In the 1990s, Lechoslaw began planning the construction of a hotel and restaurant on the highway connecting Berlin and Warsaw. In the summer of 2000, European Cooperative Bank of Poznan, Poland agreed to finance the project if it were 20% complete by December of that year, taking the real estate as security. The project would reach 20% completion upon installation of the roof and windows.
To pay his contractor to install the roof and windows, Lechoslaw purchased an official check on July 28, 2000 in the amount of $31,787.34 from the Front Street branch of Fleet National Bank in Worcester, Massachusetts. Two months later, Lechoslaw presented the check for payment at Citibank Poland in Poznan. Citibank Poland then sent the check by registered mail for collection to a Fleet office in New Jersey through Poczta Polska, the state-run postal system. However, Fleet claims that it never received the check. Meanwhile, Lechoslaw repeatedly contacted the Citibank branch in Poznan to inquire when the money would be available. Citibank Poland, in turn, contacted Fleet and learned on December 4, 2000 that Fleet was unable to trace the check. Accordingly, Citibank Poland forwarded an indemnified copy of the check on Dec. 21, 2000. Fleet tendered payment to Citibank Poland on January 20, 2001.
On February 5, 2001, Citibank Poland credited Lechoslaw $31,787.34, the full amount of the check. However, on December 1, 2000, Lechoslaw’s contractor terminated the construction contract for lack of payment and consequently, the project was not 20% complete by December 2000. For this reason, Lechoslaw lost the financing opportunity with European Cooperative Bank. Unable to secure other financing, Lechoslaw now brings this action to recover $1.2 million in damages.

DISCUSSION

This court grants summary judgment only when there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the initial burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by negating an essential element of the non-movant’s claim or by demonstrating that the evidence is insufficient to establish the claim. Kourouvacalis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The opposing party must then establish that a genuine issue for trial exists by setting forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions. Mass.R.Civ.P. 56(e). However, if the evidence is such that a jury may draw either of two opposing inferences, it is not appropriate for a court to allow a motion for summary judgment. Flesner v. Technical Communications Corp., 410 Mass. 805, 812 (1991), quoting Anderson v. Lobby, Inc., 477 Mass. 242, 252 (1986).
*383 On the record before the court, Fleet is entitled to summary judgment unless there is evidence from which a jury would be warranted in finding that Fleet received Lechoslaw’s check. For the following reasons, the plaintiff Lechoslaw has produced evidence that is sufficient to permit the finder of fact in making such a determination. Therefore, the motion for summary judgment must be denied.
In Massachusetts, “the mailing, postage prepaid of a properly addressed letter is prima facie evidence[3] of its receipt by the addressee, and when there is evidence that it was not received the question becomes one of fact.” Anderson v. Billerica, 309 Mass. 516, 518 (1941). The only prerequisites for this rule are that there be some evidence that the mailing was “properly addressed” with “postage prepaid.” Id. The reasoning underlying this application of the doctrine of prima facie evidence is that one regularly entrusted with a routine duty can be relied upon to perform it on any given occasion. “The probability that one regularly entrusted with a routine duty will perform it in a particular instance is not confined to postal clerks.” Id. at 518. See also Holiver v. Department of Public Works, 333 Mass. 18, 21 (1955); Huntley v. Whittier, 105 Mass. 391, 392 (1870).
The preceding rule may be qualified by the 1807 Supreme Judicial Court’s decision in Oliver v. The Newburyport Insurance Company. See 3 Mass. 37 (1807). This case is cited by at least one secondary authority for the proposition that the presumption of delivery does not arise when the mailing was initiated in a foreign country. See 31A C.J.S. Evidence § 154 (2d ed. 2002). However, this two-hundred-year-old case contains no discussion of why the Court reached this conclusion. See Oliver, 3 Mass. 37. Careful consideration of the facts of the case and the state of world affairs at the time of the decision are helpful in understanding the Court’s conclusion.
In Oliver, the American ship Columbia was captured by the French, and subsequently by the British, while sailing from Spain to Jamaica. Id. at 49. The British hauled the Columbia to the British colony of Antigua, where the Court of Vice-admiralty imposed a fee for “salvage” and decreed that the ship and its cargo be sold to satisfy payment. Id. The captain of the ship allegedly mailed a letter to the ship’s owners in Boston informing them of these events, and then purchased the ship himself. Id. The owners claimed to have never received the captain’s letter and the Supreme Judicial Court held that “the facts before us do not warrant a conclusion that the [owners] had received any advice of the state of their property, until the return of their captain and vessel to Boston.” Id. at 51. Although there is no discussion of the reliability of postal services at the time see id., there is good reason for the Court to have been reluctant to presume delivery of the letter.
The years surrounding 1807 were marked by the Napoleonic Wars, in which Great Britain was at war with France and Spain and hostile towards the United States. See Marshall Smelser & Joan R. Gunderson, American History At A Glance 61 (Harper & Row 4th ed. 1978). The British instituted a blockade of the French, and the French emperor, Napoleon I, instituted a blockade of the British. Id. at 61-62. American shippers took economic advantage of these hostilities by attempting to run trade between Europe and the French and Spanish islands in the West Indies. Id. By breaking the passage with a stop in an American port, they would evade seizure by the British. Id. In 1805, however, a British court ruled in the Essex Case that such ships would be subject to seizure even when breaking passage at an American port. Id. at 61. While not clear from the facts in Oliver, it is possible that the Columbia was a victim of this new rule. As a result of the seizures, the United States and Great Britain nearly went to war in 1807. Id. at 63 (discussing the Chesapeake Affair of June 22, 1807).[4]
Given such turmoil and the hostilities with Great Britain, there likely was good reason for the Supreme Judicial Court to have declined to assume the arrival of a letter sent to the United States from a British colony. Certainly, the war posed a greater demand on British vessels than did the delivery of mail from Antigua to America. Moreover, because of the frequent seizure of vessels on the high seas at the time, there was no guarantee that any ship would be able to successfully deliver its cargo. The Columbia, seized by both the French and the British in the same voyage, is one example.
The case at bar presents this court with an entirely different set of circumstances. Here, Citibank Poland sent Lechoslaw’s check by registered mail to Fleet Bank at 10 Exchange Place, Jersey City, NJ 07302 using a state-run postal system, Poczta Polska. Sreenivasan Dep., at 2. In contrast to nineteenth-century Antigua, twenfy-first-century Poland is an industrialized and highly centralized nation. See The World Almanac And Book Of Facts 758, 828 (2004). In fact, Poczta Polska held a monopoly on all mailings in Poland at the time Lechoslaw’s check was mailed. See Poczta Polska’s monopoly on delivering letters is broken, Gazeta Wyborgza, Mar. 2, 2005. Thus, not only would the duties of Poczta Polska’s employees be routine, but so would a Polish business’s regular use of Poczta Polska. Finally, unlike the state of world affairs in 1807, there is currently no international conflict between Poland and the United States that would impede delivery of correspondence. For these reasons, and most crucially, because Citibank Poland mailed the check by registered mail to a proper address through a state postal system offering a routine service, the presumption of delivery applies. As a result, this Court presumes that Fleet received Lechoslaw’s check from Citibank Poland. Fleet may certainly rebut that presumption at trial; however, this is a genuine issue of material fact. Therefore, trial, *384 rather than summary judgment, is the better course for resolution of the dispute between the parties in this case.

ORDER

For the foregoing reasons, Fleet’s motion for partial summary judgment is DENIED.

 Citibank Poland merged with Bank Handlowy and now retains the latter’s name.

 The expression “prima facie evidence” has acquired a distinctive legal meaning under Massachusetts law. As Justice Lummus explained in Cook v. Farm Service Stores, Inc., 301 Mass. 564, 566 (1938), “prima facie evidence is ‘evidence,’ remains evidence throughout the trial, and is entitled to be weighed like any other evidence upon any question of fact to which it is relevant. Prima facie evidence means evidence which not only remains evidence throughout the trial but also has up to a certain point an artificial legal force which compels the conclusion that the evidence is true, and requires the judge to give effect to its unquestionable truth by a ruling or a direction to the juiy.” (Citations omitted.) Accord, Huntley v. Whittier, 105 Mass. 391, 392 (1870). Compare, Commonwealth v. Crosscup, 369 Mass. 228, 340 (1975) (explaining that in a criminal case the “prima facie evidence” rule operates like a permissible inference).

 The Chesapeake Affair refers to an ignoble incident in our histoiy in which the British vessel HMS Commodore fired on and severely damaged the USS Chesapeake in American waters, boarded her, and removed three Americans along with a British deserter. The Americans had escaped from another British ship where they had been forced to serve as sailors. During the first decade of the nineteenth century, up to one thousand Americans were seized in this manner by the British every year. The practice led President Jefferson to adopt the Non-Intercourse Acts which barred American vessels from international trade. This proved to be economically disastrous for the nation. Ultimately, continued tensions with the British led to the War of 1812.