*New-Haven,*
November,
1814.

King
*v.*
The
Middletown
Insurance
Company.

---

## E. SAGE and E. W. SAGE *against* THE MIDDLETOWN INSURANCE ·COMPANY.

THIS was an action on a policy of insurance on the brig *Ganges* and her cargo, at and from *Gibralter* to the port of discharge in the *United States*, with liberty to go to *St. Ubes* or the *Cape de Verd* islands. The cause was tried at *Middletown*, *July* term 1814, before *Swift, Brainard* and *Baldwin*, Js.

The *Ganges* sailed from *St. Ubes*, with a cargo of salt and other articles, and arrived at *New-York*, her first port in the *United States*, on the 10th of *September* 1811. *E. W. Sage,*

Where a vessel, being insured from a port in *Europe* to the port of discharge in the *United States*, arrived at *New-York*, waited there a reasonable time for orders from

the owner, and then proceeded for *Middletown*, with a view to make that her port of discharge ; it was held, that the insurers were liable for a loss happening between *New-York* and *Middletown*.

Though as a general rule, if a vessel under such a policy arrives in port, and there voluntarily, and without cause of necessity, breaks bulk, and discharges any part of her cargo, she thereby makes such port her port of discharge ; yet if such vessel, while waiting for orders at her port of arrival, has goods on board in a perishing condition, the landing of such goods at that port will not make it the port of discharge.

The insurer is in no case liable for any commission on disbursements made by the owner for repairs.

Nor is the insurer liable for any compensation paid to the master and mariners for their services in making repairs.

Nor is the insurer liable for any injury to the vessel insured by *straining*, beyond the amount of the bill of repairs.

Sage
v.
The
Middletown
Insurance
Company.

one of the owners, who was on board as supercargo, imme-diately wrote to *E. Sage*, the other owner, at *Middletown*, for advice and direction.   On the 12th and 14th of *September*, the vessel and cargo were regularly entered at the custom-house in *New-York*.   At the same time, 150 boxes of lemons, part of the cargo, which the plaintiffs claimed to be in a per-ishing condition, were landed at *New-York*, and sold.   On the 15th, the vessel cleared out from *New-York* for *Middle-town ;* arrived off *Saybrook* bar and anchored, on the 16th ; and on the 17th, by the perils of the sea was driven from her anchorage, and stranded on *Saybrook* bar.   The court charg-ed the jury, that under the policy the vessel had a right to go to *New-York*, and there wait a reasonable time for informa-tion from the absent owner, and then proceed for *Middletown ;* and that if the lemons were actually perishing, the plaintiffs had a right to land them ; but that it was not necessary for the jury to enquire into that fact.   The court also directed the jury, if they found for the plaintiffs, to allow as part of the expense of repairs the sum of 241 dollars 97 cents paid to the master and mariners for their services while the vessel was under repair, it being shewn that they were actually employed as labourers in making repairs ; and a further sum of 50 dollars 83 cents being 2½ *per cent.* commission on the plaintiffs' bill of disbursements for the repairs.   The plaintiffs offered evidence to shew that the vessel had receiv-ed further injury by *straining* while stranded, which was not included in the bill of repairs ; to which the defendants ob-jected, contending that the claim was illegal ; but the court over-ruled the objection, and admitted the evidence.   The jury having found a verdict for the plaintiffs, the defendants moved for a new trial, on the ground of a misdirection, and for the admission of improper evidence.

*N. Smith* and *C. Whittelsey*, in support of the motion.

*Hosmer*, contra.

BALDWIN, J. [After stating the case.] The first question presented is, whether the assured could thus touch, tarry and make entry at *New-York*, without constituting that the port of discharge.   On this point I am satisfied with the opinion of the court ; but it is not necessary that I should

give my reasons at large in support of this opinion, because they are given in the case of *King* v. *The Middletown Insurance Company*, in which this point was expressly decided, and because I am of opinion that on other grounds a new trial must be granted in this case.

Admitting, then, that the plaintiffs, might, under this policy, touch at *New-York*, and there wait for information and orders from the owner at *Middletown*, a question was raised whether during such stay, they might break bulk and land any part of the cargo, provided it occasioned no additional delay or hazard ; and if not, whether they might thus land articles which were in a perishing condition. With a view to present both questions to our consideration rather than to express the decided opinion of the court which tried the cause, they charged the jury, that it was not necessary for them to enquire into the perishing condition of the lemons. If the plaintiffs, during the vessel's continuance in the port of *New-York*, had the right to break bulk, and land goods generally, then the enquiry would indeed be useless ; and if they had no right to land even perishing articles, then the enquiry would also be useless. But if the right to land depended on the perishing quality of the article landed, and extended no further, then the enquiry was important, and the charge incorrect.

Authorities have been read as applicable to the first question which seem to be contradictory. The case of *Stitt* v. *Wardell*, 2 *Esp. Ca.* 610. and that of *Sheriff* v. *Potts*, 5 *Esp. Ca.* 95. consider the breaking of bulk and landing in the first case, and receiving goods on board in the other, at an intermediate port, as destroying the policy ; but the authority of these cases is overthrown in *Raine* v. *Bell*, 9 *East* 201. in which it is expressly decided, that if the unlading of part of the cargo, during the necessary or lawful stay of a ship in port, does not alter the risk, and is not expressly prohibited, it shall not avoid the policy. The principle of this decision is recognized and supported in *Cormack* v. *Gladstone*, 11 *East* 347. and *Laroche & al.* v. *Oswin*, 12 *East* 131. ; and it seems now settled, that taking goods on board, or even trading during a voyage, if done without delay or increasing the risk, will not destroy the insurance.

These principles would apply, if *Middletown* had been named as the port of discharge ; but the case under conside-

*New-Haven*, November, 1814.

Sage v. The Middletown Insurance Company.

*New-Haven,*
November,
1814.

Sage
*v.*
The
Middletown
Insurance
Company.

ration stands on different ground. The insurance is not to *Middletown* by name as the place of destination, nor is it to her *ports* of discharge, nor is the policy limited to the port of arrival. It is confined to one port of discharge, and that at the election of the plaintiffs. We must then enquire whether the assured, under a policy thus limited, can, at the port of arrival, during a lawful detention, break bulk and land any part of the cargo, without making that the port of discharge. To constitute a port of discharge, it is not necessary that every article of the cargo should be there landed ; part may be discharged at one port, and part at another. Each becomes a port of discharge, and the policy terminates at the first. As a general rule, then, if a ship under such policy arrives in port, and there voluntarily, and without cause of necessity, breaks bulk, and discharges any part of her cargo, she has made such port her port of discharge. But if the ship, while delayed at her port of arrival, waiting for orders, has goods on board in a perishing condition, so that they cannot with safety be transported to the intended port of discharge, it is highly reasonable that such goods should be landed without prejudice to the rights of either party. It will benefit the assured, and cannot injure the insurer ; his assent will, therefore, be presumed. A contract of insurance ought to receive a liberal and rational construction. The landing of goods under such circumstances will not make a port of discharge. It is a landing from necessity, not choice. Whether the condition of the lemons in the present case was such as to justify the landing on this ground of necessity is then an important fact, and ought to have been submitted to the jury. On this ground, I think a new trial ought to be granted.

I am also of opinion, that the commission charged by the owner on the disbursements made by him for the repairs cannot be recovered against the underwriter. Commissions actually paid to *foreign agents* become part of the expense, which the owner incurs, and are always allowed as such. He is entitled to an indemnity, not a profit. I know of no case in which commissions are allowed on the disbursements made by the owner personally. He might with equal propriety charge a commission in all cases on the gross sum paid by him to his agent, including his commission on the commission paid to such agent.

The allowance of the charge for the services of the master and mariners was also incorrect. Mariners' wages are sometimes allowed during detention as a general average; but I find no case in which they have been allowed under circumstances like the present. This, however, is not a case presenting simply a charge for mariners' wages. It is an extra allowance for labour on the repairs, while they remained a part of the crew not discharged. If this were allowed against the underwriters, either the mariners would receive a double compensation for their services, or the owner would receive from the underwriters the price of day labourers, for services paid by him at a less price by the month. In the case of *Dacosta* v. *Newnham*, 2 *Term Rep.* 407. compensation was allowed to the mariners who assisted in the repairs, because the men were discharged, and afterwards employed as labourers ; and the court express a decided opinion, that it could not otherwise be allowed. It is the duty of the crew to do what they can to prevent and to repair the mischiefs incident to the voyage, without specific remuneration. When the disaster is beyond their ordinary power, extraordinary assistance may be procured, and the expense falls on the underwriter. This alone seems to be the charge sanctioned by precedent, and is perhaps the only safe rule to be adopted.

New-Haven,
November,
1814.

Sage
v.
The
Middletown
Insurance
Company.

There is still another point, of an impression wholly novel. The plaintiffs were permitted to prove, and in consequence of such proof to recover, a large allowance for injury done to their vessel by straining while stranded. I say, it is novel, because on the argument no authority, or *dictum*, was offered in support of it ; and upon diligent search, I can find no case in which the principle has been discussed. On the first view of the question, it would seem reasonable that all injuries arising from the perils insured against should be compensated ; but the difficulties of adjusting the variety of losses incident to insurance has led to the adoption of known rules, which, as general guides, will do substantial justice, though in particular cases they may be attended with hardship. Thus, it is a rule that when a loss is repaired by a new article, a deduction of one third new for old be always made, even though the article lost were as good as new. So it seems at least to be tacitly understood in the business of insurance, that invisible, uncertain and

*New-Haven,*
November,
1814.

Sage
*v.*
The
Middletown
Insurance
Company.

conjectural damages are never the subject of remuneration. The wear and tear of a ship, that weathers a storm in safety, may greatly lessen her value, and yet not be the subject of repair or remuneration by the underwriter. So a ship stranded and got off may be strained, and thereby become less valuable; yet I apprehend the injury is not the subject of adjustment, unless it is of a nature capable of repair in the ordinary course of such business; and then the loss must be ascertained by the actual expense of such repairs, with such deductions as custom has established. In this case, the injury complained of by straining, is of such a nature that it is not pretended it could be repaired, otherwise than by rebuilding the ship; and because it is irreparable, compensation in damages is claimed. The allowance of such a claim would open a door for infinite fraud, imposition and uncertainty, and end in the destruction of all that is valuable in insurance. I am clearly of opinion, that this item in the damages is unprecedented, improper, and that it ought not to be allowed.

For these reasons I think a new trial ought to be granted.

In this opinion the other Judges severally concurred.

New trial to be granted.