Judge Wright
delivered the opinion of the court:
The motion for a new trial first claims our attention. The items of Robinson’s bill are by the jury placed under our supervision in settling the law of the case, and it will not be necessary to grant a new trial on that account; even if some of the items in the amount were improperly charged. But if it was not so, there was evidence given to the jury upon those items, as upon all the other matters objected to as found without evidence. The evidence submitted warranted the jury in finding as they did, as to all the general items, but that for the wages of the crew as laborers; and this court is not inclined to weigh the evidence after the jury, to see if they might not come to a different conclusion on the same premises. It is only where a verdict is palpably against the evidence, or the decided weight of it, that courts are warranted in interfering to set it aside, in order to send the cause to another trial. That is not this case. The motion for a new trial, therefore, is overruled. The claims for the wages of the crew as laboring hands we will consider hereafter.
The plaintiffs assert a claim to all the items returned by the jury, because the case made was of an injury warranting an abandonment for a total loss, and they were prevented from abandoning by the agreement of the underwriters to pay for the repairs.
The authorities show that where the underwriter, by his *480 interference, prevents the insured from abandoning, he is liable 478] *for all the loss sustained by the injury to the extent of his insurance. 2 Cond. Marsh, on Ins. 598; 2 Term, 407. And if the right to abandon exist, and the underwriter agree to pay for the repairs, he may be held on such agreement even beyond the amount insured. 2 W. 6; 6 R. 3, 9; 3 Mass. 51, 437; 2 Term, 407.
It is insisted that as the voyage was broken up and lost, that circumstance authorized the insured’ to abandon. 3 Mason 51, 437. If the right of the plaintiffs to abandon, depends upon the breaking up of the particular voyage in which the Galena was employed at the time of the injury, it can not be regarded in this case. The insurance here is on the boat upon time, and has no relation to the voyages of the boat, or the freight she'carries. If the boat lay in ordinary the whole time, she is at the risk of the insurer, and it is ■ no part of the contract that she shall make any voyage. The breaking one up, then, can confer no right on the insured.
'The finding of the jury is, that the boat was not abandoned to the defendants. The plaintiffs proposed to abandon, but were prevented by the agreement of the defendants to pay their proportion of the costs of repair. This-is not an interference with the boat, nor an agreement to pay all repairs, but simply an agreement to pay their proportion of the costs of repair; that is, what they were liable to pay. If the insured had a right to abandon, this agreement to pay could not have prevented them from doing so, in any way to increase the liability of the insurer. The interference seems to us simply this, if you do not abandon and proceed in the repair, we will pay our proportion of the repair. It appears evident to us that the agreement precludes the idea that they were understood to agree to pay all expenses and repairs, and that the agreement prevented the abandonment. The proposition to abandon not being persisted in, the parties were left to their legal liabilities.
We are next to consider the items of the verdict. The defendants object to the whole, and,
1. Is the whole amount of Eobinson’s bill chargeable upon the insurer? I have looked over the account. The charges are expressly made as for repairs of the injury to the Galena at the Colbert shoals, on the Tennessee, and sworn, to as such. The items are such as would ordinarily arise in such repairs. No particular *481 item is objected to. The objection is directed *more against [474 the aggregate amount than the charges. The jury find the payment of this bill part of the expense of repairs.
2. As to the residue of the amount found for repairs íd the general item, it is not objected to.
3. The next item is for the wages of the crew between the founder of the boat and their discharge at New Albany. The decisions we have heretofore made on this point should put this item at rest In Perry v. Ohio Insurance Company, 5 Ohio, 306, and in Gazzam v. Cincinnati Insurance Company, ante, 73, this court expressly decided that the insurer was not liable on this kind of policy, for the wages and provisions of the crew, even though they were exclusively employed about the repair of the injured boat. The insured is only liable for the extraordinary expense occasioned by the injury, which does not include expenses for the mere delay of the boat, or ordinary wages for her navigation to the port of repair. These decisions, in our understanding of them, exclude from the verdict the item for the wages of the crew before their discharge at New Albany, and the item for the provisions of the crew. Besides, the boat on her way to the port of repair, earned towage of another boat, and passage money, one hundred and seventy-five dollars and fifty cents, which is credited in the- account. Instead, therefore, of being an unmanageable wreck, to be driven by external power, she was earning freight.
4. The next item found by the jury and objected to, is that for commissions on the money advanced for repairs. The right to this charge will be determined by the answer to the question : was New Albany, at the foot of the falls of the Ohio, a foreign port to the insured, upon a policy on time to navigate the western waters ? Such commissions for raising money have been allowed as a charge upon the underwriter, when from necessity the assured has been compelled to raise money in a foreign port. The expense of raising funds in a foreign port is inevitable, and therefore chargeable on the underwriter. But no such charge is admissible where the expenditure is at home. 1 Conn. 242. The policy in this case has express reference to the western waters as the range of the boat. She may run on them or lie still, in -either event the risk attaches. The policy was executed at .Louisville, the expenses were incurred there. Without other evidence we must regard that place the homo of the boat. The undertaking is to pay the loss, if it exceed ten *482 475] per cent., sixty days after proof of loss. *What do the terms-proof of loss mean in this policy? We think it must, of necessity, .include proof of the fact of loss, and the amount of the loss if partial, or if not, that it exceeds the whole amount at risk. The underwriter has no right to do the work in his own manner, and with his own materials. His undertaking is to pay the amount, not to do the work. 3 Mass. 85. This item, therefore, is not admissible-
The only remaining item is that for the wages of the crew, while engaged in the repairs at the request of the corporation,, after they were discharged as a crew. The amount found by the jury includes the wages of the captain, mate, clerk, several engineers, cook, and common hands, at a rate of compensation ranging from fifteen to one hundred and seventy-five dollars a month. The jury find that some of the hands after their discharge were employed by the captain at the request of the boat’s carpenter to-expedite the repairs. The captain was not, therefore, among-those of the crew employed; he was the employer. His wages are-to be stricken out. The proof was that common hands were to be had, at the place of repair, for from seventy-five to eighty-seven and a half cents a day, finding themselves. If the crew, including-engineers at one hundred and seventy-five dollars a month, were-discharged as a crew, and employed as hands in expediting the-, repairs, they would be entitled only to the pay of common hands. The jury find that their employment did not increase the expense-of repair. In this they must have erred, or it must appear that their extraordinary wages were occasioned by extraordinary labor, of which there was no evidence. Robinson, the carpenter, says, in his deposition, “ the captain retained some at my request, for the purpose of aiding me.” Webb, the captain, says, “ the hands who remained with the boat whilst the repairs were progressing,, were such hands as I was pleased with, and I kept them that did remain in that service with a view of having them altogether, that. I might command their services when the boat should be repaired.” The account rendered is for payments, as we have seen for the different officers and men of the boat, at the wages pertaining to-their different stations and grade- of employment. As hands engaged merely in the repair, they were only entitled to the wages of such hands. Webb’s deposition would seem to make it pretty clear that some other consideration entered into their discharge and new employment, beyond the mere labor on the repairs ; they *483 were, in part at least, employed that they might be at command, ready for service, when the repairs were completed. *This [476 evidence and the manner of keeping the'accounts render this whole item suspicious. We have doubted if it should not be altogether-rejected, the confusion in the accounts arising from plaintiff’s manner of keeping them ; but upon the whole, conclude that so much should be allowed, as the work of all the crew, except the captain, amounts to, at the wages of common hands, say seventy-five cents a day. At this rate the days charged three hundred' and thirty exclusive of Sundays, would make the sum of two hundred and forty-seven dollars and fifty cents.
Arranging the verdict upon these principles, it will stand as follows:
For the expense of repairs....................................... $2,362 23
Additional for the crew employed as hands three hundred and thirty days, exclusive of Sundays, at seventy-five cents per day......................................... 247 50-
Total................................................................. 2,609 73
Deduct proceeds of two lighters sold,......................... 25 00
Whole loss......................................................... $2,584 73
Five-eighths of which is.......................................... 1,846 23
Deduct one-third new for old,.................................. 615 41
And the amount of loss is.................................... $1,231 82
Add interest from sixty days after repairs completed, say from June 8, 1832, to May 2, 1834, nineteen months and twenty-four days,................................ 145 64
Sum for which the verdict is to be entered............... $1,377 46
The plaintiffs may take judgment for that amount, or if they refuse, a new trial will be awarded. Judgment for the plaintiffs. 2 Caine, 79.